# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

| | | |
|---|---|---|
| NELIO COSTA, derivatively on behalf of GRANITE X, LLC, NELIO COSTA, CORNELL COSTA, GRANITE EXPRESS OF NASHVILLE, CORP., and GRANITE EXPRESS OF USA, INC., | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Docket No.: JURY DEMANDED |
| OMNI STONE DISTRIBUTORS, LLC, NATURAL STONE SURFACES AND SUPPLY, LLC, ERIC JAMES SMITH, OMAR HERNANDEZ A/K/A OMAR EDILTON HERNANDEZ-DIAZ, GABRIELA CORONADO A/K/A KRISTHEL LOVELL, ROBERT MCCAULEY, EDWARD MOUCK, JOHN PULECIO, PINNACLE STONE ENTERPRISES, INC., and ISAAC MONTES AND ISABELLA MONTES D/B/A SITAC MARBLE AND GRANITE SURFACES, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT

Come now, the Plaintiffs, Nelio Costa, individually and derivatively on behalf of

Granite X, LLC ("Granite X"), Cornell Costa, Granite Express of USA, Inc. ("Granite

Express USA"), and Granite Express of Nashville, Corp. ("Granite Express Nashville")

("Plaintiffs"), by and through their attorneys, and for their Complaint, allege as follows:

## NATURE OF COMPLAINT

1.     This is an action by the Plaintiffs against the Defendants, Omni Stone Distributors, LLC ("Omni Stone"), Eric James Smith ("Smith"), Omar Hernandez a/k/a Omar Edilton Hernandez-Diaz ("Hernandez"), Gabriela Coronado a/k/a Kristhel Lovell ("Coronado"), Robert McCauley ("McCauley"), Edward Mouck ("Mouck"), John Pulecio ("Pulecio"), Pinnacle Stone Enterprises, Inc. ("Pinnacle Stone"), and Isaac Montes and Isabella Montes, together d/b/a "Sitac Marble and Granite Surfaces" ("Sitac") ("Defendants"), asserting, *inter-alia*, violations under: Admiralty and Maritime Law; the Lanham Act; the RICO Act; misappropriation of trade secrets; breach of fiduciary duty; conversion; abuse of process; and, other legal and equitable claims arising out of the Defendants' conspiracy to convert and misappropriate the inventory, equipment, funds, confidential information, trade secrets, and employment and business relationships of Granite Express USA and Granite Express Nashville.

2.     The Defendants did so to divert business and prospective business opportunities from Granite Express USA and Granite Express Nashville and to sell natural stone products to Granite Express Nashville's own customers and distributors in direct competition with it during the course of their employment with Granite Express Nashville, as well as following termination of the same.

3.     Granite Express USA is a regional leader in the distribution and sale of natural stone products, doing business through nine (9) warehouse affiliates strategically located throughout the Southeastern and Mid-Atlantic regions. Since 2007, Granite Express USA has developed a valuable network of suppliers and a unique strategy in the

procurement of stone products that gives it and its affiliates a competitive edge in the marketplace.

4. Granite Express Nashville is a branch of Granite Express USA. It is a local distributor of natural stone products in the greater metropolitan Nashville and surrounding areas. Since 2010, Granite Express USA and Granite Express Nashville have developed a loyal customer base comprised of fabricators, contractors, and other professionals, together with a valuable array of proprietary and confidential distribution processes and customer databases that give these companies a competitive edge in the marketplace.

5. At all times material hereto, Smith and Hernandez were full-time employees of Granite Express Nashville. As a result of their employment responsibilities, Smith and Hernandez enjoyed unparalleled access to Granite Express Nashville's confidential information and trade secrets including, but not limited to, its customer lists and information, product preferences, pricing strategies, cost and profit margin information, accounting, invoicing, warehouse and delivery controls, and the supplier identity and histories shared between Granite Express USA and Granite Express Nashville. At all times material hereto, both Smith and Hernandez owed both Granite Express USA and Granite Express Nashville a fiduciary duty of loyalty.

6. As Granite Express USA and the principals of Granite Express Nashville focused their attention on expanding business operations to additional markets, Smith and Hernandez realized that their access to the most confidential information and trade secrets of Granite Express USA and Granite Express Nashville gave them the opportunity to make personal profits by selling natural stone products on the side to Granite Express Nashville's own customers. They also realized that their supervision responsibilities for all branch and

3

back-office operations allowed them to convert Granite Express Nashville's inventory, equipment, and manpower for their own personal profit. In addition, they enlisted the active participation of other Granite Express Nashville employees in their scheme. (Smith and Hernandez, together with other former employees, are referenced hereinafter as "Former Employees").

7. Starting in May, 2013, with the help of Pulecio, a customer of Granite Express Nashville, and later his company, Pinnacle Stone, Smith and Hernandez set up and ran a side business from within the Nashville warehouse of Granite Express Nashville, misappropriating as they deemed convenient the tradenames of Granite Express USA and Granite Express Nashville, together with the fictitious name "Natural Stone Surfaces" ("NSS"), to procure and sell granite and marble slabs to Granite Express Nashville's own customers.

8. Smith and Hernandez also began to steal granite from Granite Express Nashville, skimming from otherwise legitimate transactions with Granite Express Nashville customers by selling material to them at an agreed-upon price using a sales order and then logging a fake invoice into Granite Express Nashville's accounting system reflecting substantially discounted prices for the material sold. This process generated a "credit" for the client that was applied against additional material, which was identified in one or more commercial invoices and removed from the Granite Express Nashville inventory by Smith and Hernandez and sold through NSS. Neither the fake commercial invoices, nor the additional material listed therein, were ever delivered by Smith, Hernandez, or the Former Employees, to the unsuspecting customers. Smith and Hernandez treated the Granite Express Nashville facilities as their own and recruited

employees McCauley, Mouck, and later an individual initially identified as "Gabriela Coronado," who, in fact, is the live-in nanny to Smith's children and an undocumented alien, to participate in their scheme, all the while on the payroll of their employer.

9.     As their side business inevitably grew, Smith and Hernandez realized their operation could process more material than they could steal from Granite Express Nashville.  Accordingly, they conspired with certain customers to procure, purchase, import, and/or receive containers of natural stone products and related accessories, such as sinks, that were shipped directly to the Granite Express Nashville warehouse on said customers' behalf, and then to unload and deliver said merchandise to the same, receiving in exchange a commission for their services, often in the form of a portion of the ordered material.  Isaac and Isabella Mendes, traveling under the tradename "Sitac", were counted among the preferred customers of Smith and Hernandez, NSS, and subsequently, Omni Stone, in this regard.

10.     Additionally, Smith and Hernandez acted in concert with Pulecio, a local fabricator and long-time client of Granite Express Nashville, and later his company, Pinnacle Stone, to help move material through and serve as the "strawman" to procure and import additional granite for resale through their operations.

11.     These sophisticated commercial transactions demanded the use of commercial banking and credit facilities, so Smith and Hernandez subsequently incorporated Natural Stone Surfaces and Supply, LLC, which also was referred to by use of the initials "NSS" on October 20, 2014, with the principal place of business listed as a warehouse located across the street from the Granite Express Nashville warehouse and opened new bank accounts and credit card services through this company.

12.     After uncovering the misdeeds of the Former Employees, Granite Express Nashville terminated the employment of the Smith and Hernandez on August 28, 2015. Granite Express Nashville also terminated the employment of the individual identified as "Gabriela Coronado", McCauley, and Mouck for cause, including their abandonment of the workplace.

13.     As of this writing, Granite Express Nashville has not unraveled the full extent of the scheme or identified all those who were active participants. In fact, the delays incurred in filing this Verified Complaint are directly attributable to the complex scheme implemented by the Plaintiffs on a massive scale. Inventory, monies, equipment, and business opportunities have been misappropriated and diverted as a part of this scheme. For example, multiple shipments of containers acquired through suppliers with whom Granite Express USA has active relations, have arrived at their new warehouse. Smith and Hernandez are likely to hide this material and move to empty the bank accounts related to these activities, and further, attempt to abscond with the proceeds from their scheme.

14.     To block and actively interfere with the ongoing investigation of Granite Express USA and Granite Express Nashville, as well as their efforts to preserve advantageous business relationships and limit the financial damages caused by the scheme, Smith and Omni Stone filed a groundless lawsuit against Granite Express Nashville, as well as its principals, and Granite X, in the Circuit Court for Davidson County, Tennessee ("Tennessee State Lawsuit"). Revealing the true agenda underlying this suit, Smith and Omni Stone purportedly seek the intervention of that court to oversee the administrative dissolution of Granite X, while simultaneously converting assets of this newly-formed

6

corporation for their own personal gain. Thus, the Plaintiffs are required to obtain relief in this Court.

15. For all of these reasons, Granite Express USA and Granite Express Nashville bring this action to, *inter alia*, enjoin any further illegal procurement and sales of granite and recover damages as a result of the illegal scheme. In addition, Granite Express USA and Granite Express Nashville seek emergency injunctive relief, including seizure of all assets, whether misappropriated directly or acquired as a result of same, to ensure that Smith, Hernandez, their corporate doppelgangers, NSS and Omni Stone, the remaining Former Employees, and their accomplices can no longer purchase, sell, or profit from the misappropriation of confidential information, trade secrets, and other assets of Granite Express USA and Granite Express Nashville.

## THE PARTIES

16. Granite Express USA is a Florida corporation with its principal place of business in Miami-Dade County, Florida.

17. Granite Express Nashville is a Tennessee corporation with its principal place of business in Davidson County, Tennessee.

18. Omni Stone is a Manager Managed Tennessee Limited Liability Company, with its principal place of business located in Davidson County, Tennessee. Omni Stone is a mere continuation of NSS and was incorporated fraudulently by Smith and Hernandez for the purpose of escaping liability for the wrongful conduct they perpetrated as employees of Granite Express Nashville, both individually and through their *alter-ego*, NSS. As such, Omni Stone is liable as the successor for the liabilities of Smith, Hernandez, and NSS.

7

Omni Stone can be served with process through its registered agent, Omar Edilton Hernandez, 4925 Secretariat Drive, Antioch, Tennessee 37013-2190.

19.     NSS is a Director Managed Tennessee Limited Liability Company, that is presently listed as inactive, having been administratively dissolved with the Tennessee Secretary of State, with its previous principal place of business located in Davidson County, Tennessee. NSS can be served with process through its registered agent, Eric J. Smith, 2832 Logan Street, Suite F, Nashville, Tennessee 37211-2473.

20.     Smith is an individual, *sui juris,* who resides in Davidson County, Tennessee. Smith was the General Manager for Granite Express Nashville. The names "NSS" and "Natural Stone Surfaces" were trade names or business *alter egos* used by him to purchase and sell natural stone products for his own account. Smith was the Director and/or agent of NSS and is presently a Manager of Omni Stone. Smith can be served with process at 2832 Logan Street, Suite F, Nashville, Tennessee 37211-2473.

21.     Hernandez is an individual, *sui juris,* who resides in Davidson County, Tennessee. Hernandez also goes under the name "Omar Edilton Hernandez-Diaz." Hernandez was the Warehouse Manager for Granite Express Nashville. The names "NSS" and "Natural Stone Surfaces" were trade names or business *alter egos* used by him to purchase and sell natural stone products for his own account. Hernandez was an agent of NSS and is presently a Manager of Omni Stone. Hernandez can be served with process at 4925 Secretariat Drive, Antioch, Tennessee 37013-2190.

22.     Coronado is an individual, *sui juris,* who resides in Davidson County, Tennessee. Coronado also goes under the name "Kristhel Lovell." She was the receptionist and secretary for Granite Express Nashville. Coronado was an agent of NSS

and is presently employed as a secretary/office manager for Omni Stone. Upon information and belief, Coronado also is and/or was the live-in "nanny" for the children of Smith, is an undocumented alien, and was officially hired by Smith as an employee of Granite Express Nashville through the use of forged identification for the purpose of supplementing his own income. Coronado can be served with process at 2832 Logan Street, Suite F, Nashville, Tennessee 37211-2473.

23. McCauley is an individual, *sui juris,* who resides in Davidson County, Tennessee. McCauley was a driver and warehouse worker for Granite Express Nashville. He also was an agent of NSS and is presently employed as a driver for Omni Stone. McCauley can be served with process at 2832 Logan Street, Suite F, Nashville, Tennessee 37211-2473.

24. Mouck is an individual, *sui juris,* who resides in Davidson County, Tennessee. Mouck was a driver and warehouse worker for Granite Express Nashville. He also was an agent of NSS and is presently employed as a driver for Omni Stone. Mouck can be served with process at 2832 Logan Street, Suite F, Nashville, Tennessee 37211-2473.

25. John Pulecio ("Pulecio") is an individual, *sui juris,* who resides in Davidson County, Tennessee. Pulecio is the President of Pinnacle Stone. He also was an agent of NSS and is presently an agent of Omni Stone. Pulecio may be served with process at 201 Lyle Lane, FL 2B, Nashville, Tennessee 37210-4824.

26. Pinnacle Stone is a Tennessee corporation with its principal place of business in Davidson County, Tennessee. Pinnacle Stone was an agent of NSS and is

presently an agent of Omni Stone. Pinnacle Stone can be served with process through its principal, John Pulecio, at 201 Lyle Lane, FL 2B, Nashville, Tennessee 37210-4824.

27. Isaac Montes is an individual, *sui juris,* who resides in Davidson County, Tennessee, and together with his wife, Isabella Montes, engages in the business of natural stone fabrication for custom residential and commercial installations, doing business under the name "Sitac Marble and Granite Surfaces." Isaac Montes can be served with process at 332 Wilhagan Road, Nashville, Tennessee 37217.

28. Isabella Montes is an individual, *sui juris,* who resides in Davidson County, Tennessee, and together with her husband, Isaac Montes, engages in the business of natural stone fabrication for custom residential and commercial installations, doing business under the name "Sitac Marble and Granite Surfaces." Isabella Montes can be served with process at 332 Wilhagan Road, Nashville, Tennessee 37217.

## JURISDICTION AND VENUE

29. This Court has federal question jurisdiction over Counts I, IX, X, and XI of this action pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the remaining counts pursuant to 28 U.S.C. § 1367.

30. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims occurred in this District, a substantial part of the property that is subject to this action is situated in this District, and the Defendants are subject to personal jurisdiction in this District.

10

## FACTUAL ALLEGATIONS

**A.**     **Granite Express expands its Network to Tennessee with Granite Express Nashville.**

31.     Granite Express USA is a regional leader in the distribution and sale of natural stone products, with nine (9) warehouse affiliates strategically located throughout the Southeastern and Mid-Atlantic regions.  Since 2007, Granite Express USA has developed a valuable network of suppliers and a unique strategy in the procurement of stone products that gives it and its affiliates a competitive edge in the marketplace.

32.     Granite Express USA ventured into the Nashville market following the tragic 2010 flood.  In addition, Granite Express USA's principals believed that the Nashville market had tremendous potential for growth in the coming years.  Accordingly, Cornelio Costa and his son, Nelio Costa, incorporated Granite Express Nashville as an affiliate of Granite Express USA in late 2010.

33.     Since that time, Granite Express Nashville has developed a loyal customer base comprised of fabricators, contractors, and other professionals, together with a valuable array of proprietary and confidential distribution processes and customer databases that give it a competitive edge in the marketplace.

34.     Granite Express Nashville is a distributor of granite.  The material sold by Granite Express Nashville is acquired exclusively and directly from Granite Express USA, which, in turn, is responsible for the procurement, purchase, and allocation of product among its various branch locations.  Material is transferred from the Granite Express USA headquarters directly, and it also instructs exporters to drop ship product directly to the branch location.

11

35.     Granite Express Nashville does not sell to end-users, such as residential homeowners, or to construction companies.  It relies exclusively upon a customer base of local fabricators, who identify end-users and fabricate custom projects using natural stone products in residential applications such as kitchens and bathrooms, as well as commercial projects.  Granite Express Nashville maintains a sizeable warehouse containing a variety of natural stone products.  Typically, the fabricator sends a customer over to the warehouse who reviews and ultimately selects the natural stone product to be used in any given project.  However, the material is sold directly to the fabricator, not the end-user, and pricing information is shared exclusively with the fabricator.

36.     The sale of merchandise by Granite Express Nashville is typically realized through the use of a "purchase order" from a customer or a "sales order" prepared and issued by an employee of Granite Express Nashville.  The selected material is typically loaded onto a Granite Express Nashville truck by its employees, who are given a copy of an invoice for the material as well as a log that must be executed by the customer confirming "proof of delivery."  It is not the business practice of Granite Express Nashville to deliver product to a customer without delivery of an accompanying invoice, nor is it Granite Express Nashville's practice to release such product to a customer without first obtaining a signature confirming "proof of delivery."

37.     As an express condition of his or her respective and/or continued employment with Granite Express Nashville, each of the Former Employees executed a non-compete and confidentiality agreement ("Agreement") with Granite Express USA and Granite Express Nashville, as its assignee.  Each of the Former Employees also executed a form acknowledging having received and agreeing to be bound by an employee handbook

("Handbook"). A true a correct copy of the Agreement and selected portions of the Handbook for each of the Former Employees is attached hereto as <u>Collective Exhibit A</u> and incorporated herein by reference.

38. The Agreement provides, in relevant part, as follows:

> …the undersigned Employee hereby agrees not to directly or indirectly compete with the business of GRANITE EXPRESS OF USA and its successor and assigns ***during the period of employment and for a period of (1) year following termination of employment***…GRANITE EXPRESS OF USA shall or may in reliance of this agreement provide Employee ***access to trade secrets, customers, and other confidential data and good will. Employee agrees to retain said information as confidential and not to use said information on (sic) his or her own behalf or disclose same to any other party***. This agreement shall be binding upon and inure to the benefit of the parties, their successors, assigns, and person (sic) representatives.

<u>(Coll. Exh. A)</u> (emphasis added)

39. The Handbook also provided, in relevant part, as follows:

> **105    Conflicts of Interest**
>
> Employees have an obligation to conduct business within guidelines <u>that prohibit actual or potential conflicts of interest.</u> This policy establishes only the framework within which ***Granite Express*** wishes the business to operate. The purpose of these guidelines is to provide general direction so that employees can seek further clarification on issues related to the subject of acceptable standards of operation. Contact Executive  Management for more information or questions about conflicts of interest.
>
> ***Business dealings with outside firms should not result in unusual gains for those firms.  Unusual gain refers to bribes, product bonuses, special fringe benefits, unusual price breaks, and other windfalls designed to ultimately benefit either the employer, the employee, or both***. Promotional plans that could be interpreted to involve unusual gain require specific executive-level approval.

13

An actual or potential conflict of interest occurs when an employee is in a position to influence a decision that may result in a ***personal gain for that employee*** or for a relative as a result of ***Granite Express'*** business dealings. For the purposes of this policy, a relative is any person who is related by blood or marriage, or ***whose relationship with the employee is similar to that of persons who are related by blood or marriage.***

No "presumption of guilt" is created by the mere existence of a relationship with outside firms. However, ***if employees have any influence on transactions involving purchases, contracts, or leases, it is imperative that they disclose to an officer of Granite Express as soon as possible established to protect all parties.***

***Personal gain may result*** not only in cases where an employee or relative has a significant ownership in a firm with which **Granite Express** does business, but also ***when an employee or relative receives any kickback, bribe, substantial gift, or special consideration as a result of any transaction or business dealings involving Granite Express.***

## 106 Outside Employment

Outside employment that constitutes a conflict of interest is prohibited. Employees may not receive any income or material gain from ***individuals outside Granite Express*** for materials produced or services rendered ***while performing their jobs.***

## 107 Non-Disclosure

...The disclosure of confidential business information and trade secrets is vital to the interests and the success of ***Granite Express.*** Such confidential information which constitutes trade secrets as defined includes, but is not limited to, the following examples:
*compensation data
*financial information
*pending projects and proposals
*client lists and/or information

*internal company price lists and/or special pricing of products

Employees who improperly use or disclose confidential business information and trade secrets will be subject to disciplinary action, up to and including termination of employment and legal action, even if they do not actually benefit from the disclosed information.

**706    Return of Property**

*...**Granite Express may also take all action deemed appropriate to recover or protect its property.***

(Id.) (emphasis added)

40.    Smith and Hernandez were two longstanding key employees of Granite Express Nashville.  Smith was one of the company's first employees, having been hired on May 26, 2011, ***and was employed continuously on a full-time basis*** by Granite Express Nashville until August 28, 2015, when he abandoned his employment and was subsequently terminated for cause.  Other than a failed fabrication business that he claims to have owned in St. Louis, Missouri, Smith had no experience in the granite industry, nor any work experience whatsoever in the local market, prior to his employment by Granite Express Nashville.  He served as the company's General Manager, as well as its key sales representative.  Hernandez was hired by Granite Express Nashville shortly thereafter, on October 27, 2011, and served as its Warehouse Manager continuously until August 28, 2015.

41.    As a result of their employment responsibilities and the trust and confidence placed in them by Granite Express USA and Granite Express Nashville, Smith and Hernandez enjoyed unparalleled access to their confidential information and trade secrets, including, without limitation, the following:

a. Names and addresses of customers and suppliers;

b. Product preferences for each client;

c. Knowledge of Granite Express Nashville's pricing methods and strategies, including cost and profit margin information;

d. Terms of payment;

e. Knowledge of Granite Express Nashville's prospective customers;

f. Knowledge of Granite Express Nashville's marketing strategies;

g. Knowledge of the needs and preferences of customers, including lists of products ordered by each particular customer, dates of orders and deliveries, and quantity of goods required by customers and distributors;

h. Financial data, such as sales and profit forecasting, costs, spending priorities, revenue goals, and pricing strategies; and,

i. Accounting, invoicing, warehouse, and delivery controls.

42.     The confidential and trade-secret information listed above is of particular competitive significance and value because it is sufficiently secret not to be generally known by competitors of Granite Express USA and Granite Express Nashville, which would greatly benefit from access to such information. Granite Express Nashville's use of this confidential and trade secret information has been a key to its success in the Nashville market.

43.     Both Granite Express USA and Granite Express Nashville have taken reasonable measures to protect the secrecy of their confidential and trade-secret information. Those measures include, but are not limited to, the following:

a. Granite Express Nashville's facilities are secured with locks and an alarm system;

b. No visitors to the warehouse are allowed beyond the reception area of Granite Express Nashville's facilities unless their identity is logged-in and verified and their access to the remainder of the facility is authorized and accompanied by a Granite Express Nashville employee;

c. Granite Express Nashville's electronically stored confidential and trade-secret information is passcode protected;

d. Employees have access to confidential and trade-secret information on a need-to-know basis;

e. All of Granite Express Nashville's employees, and especially their key employees, are required to acknowledge their notification of and agreement to strict non-disclosure and non-compete requirements; and,

f. Granite Express Nashville's employees, and especially their key employees, are required to acknowledge their notification of and agreement to Granite Express Nashville's company policies, which require strict compliance with measures to protect confidential and trade-secret information.

44. Smith and Hernandez were informed that they would receive in the course of their employment confidential and trade secret information belonging to Granite Express USA and Granite Express Nashville. Smith and Hernandez both agreed to maintain the confidentiality of that information. Smith and Hernandez knew of the Granite Express USA and Granite Express Nashville company policies on maintaining the confidentiality

17

of trade secrets and other competitively sensitive information. Each was required to maintain the confidentiality of trade secret information belonging to Granite Express USA and Granite Express Nashville as a result of their employment and the fiduciary relationship assumed by Smith and Hernandez, respectively. At all times relevant hereto, both Smith and Hernandez owed Granite Express Nashville a fiduciary duty of loyalty.

**B.** **Smith and Hernandez Conspire with other Employees and outside help to steal Granite Express Nashville's Products and Misappropriate its Trade Secrets.**

45. At some point in time in early 2013, Smith and Hernandez realized that their day-to-day employment responsibilities without the regular on-site presence of the principals of Granite Express Nashville provided them with largely unsupervised access to its warehouse and facilities, as well as its confidential information and trade secrets. Smith and Hernandez realized that they could develop a side business selling and brokering natural stone material for their own account to actual and prospective customers of Granite Express Nashville. They also discovered these activities would remain "hidden in plain sight" in Granite Express Nashville's own warehouse, where their continuous presence would avoid raising the suspicions of its principals.

46. Smith and Hernandez were overcome with greed and became "partners" together with Pulecio, a fabricator and long-standing client of Granite Express Nashville, to steal trade secrets, confidential information, and advantageous business opportunities, both present and future, of Granite Express USA and Granite Express Nashville and to make substantial profit for themselves at Granite Express Nashville's expense and to Granite Express Nashville's great injury.

47.     The illegal scheme involved selling natural stone to Granite Express Nashville's own customers, in direct competition with Granite Express Nashville. One of the means by which they obtained product was to "skim" from otherwise legitimate sales on behalf of Granite Express Nashville by selling to their customers at one price identified in a sales order, and then logging that same order in the accounting system into a bogus commercial invoice at a discounted price for the same material. These invoices were never delivered to the unsuspecting customers, who treated the sales order as the final confirmation of the sales transaction.

48.     This scheme generated a fake accounting "credit" that would be applied against additional merchandise, which they diverted for their separate activities.

49.     Smith and Hernandez treated the Granite Express Nashville facilities as their own and recruited employees McCauley, Mouck, and an individual who was initially identified as "Gabriela Coronado" to participate in their scheme, all the while on the payroll of their employer.

50.     Mouck participated in the scheme in the same manner as McCauley, delivering product without the requisite invoice and failing to secure an executed proof of delivery. McCauley and Mouck also intentionally omitted all deliveries made on behalf of NSS to customers.

51.     For her part, Coronado failed to log all customers and deliveries received in the warehouse, specifically those pertaining to NSS, a parallel operation with which she was familiar, and she aided and abetted Smith in keeping this side business a secret from the principals of Granite Express Nashville.

52. Smith and Hernandez initiated their side business in 2013 under the fictitious name "Natural Stone Surfaces" used on their invoices, as well as the initials "NSS", and began to sell and consign granite back to the customers of Granite Express Nashville. In further support, a true and correct copy of the Affidavit of Luis Torres ("Torres Affidavit") is attached hereto as <u>Exhibit B</u> and incorporated herein by reference.

53. As their side business grew, Smith and Hernandez realized they needed more material than they could steal from Granite Express Nashville, so they entered into side deals with certain customers to procure, purchase, and import entire containers of material that shipped directly to the Granite Express Nashville location, unloaded, and delivered, taking for themselves a certain number or "bundle" of granite slabs as a "commission" for their services. Isaac and Isabella Mendes took advantage of these services on numerous occasions.

54. Additionally, Smith and Hernandez employed Pulecio, a local fabricator and long-time client of Granite Express Nashville, and ultimately his company, Pinnacle Stone, to serve as the "strawman" to procure and import additional granite for resale through their operations without exposing their identity. He joined Smith and Hernandez as a "partner" in their illegal scheme. In further support, a true and correct copy of the affidavit of Urbano Dickel ("Dickel Affidavit") is attached hereto as <u>Exhibit C</u> and incorporated herein by reference.

55. These sophisticated commercial transactions demanded the use of commercial banking and credit facilities, so Smith and Hernandez opened a separate company, Natural Stone Surfaces and Supply, LLC, also referred to as "NSS," which Smith incorporated on October 20, 2014, with a borrowed address located across the street from

the warehouse, and opened new bank accounts and credit card services through this company.

56.     Smith and Hernandez used Granite Express Nashville's trade secrets and confidential information to further their scheme. Among other things, each:

        a.  Used Granite Express Nashville's customer lists, knowledge of customer preferences and other customer information to sell the product; and,

        b.  Used Granite Express Nashville's cost, profit margin, and other pricing information to price their product.

57.     On information and belief, the Defendants sold several hundreds of thousands of dollars worth of product in direct competition with Granite Express Nashville, not taking into consideration the damage caused to its actual and prospective business relations and opportunities.

**C.      Smith Takes Extraordinary Steps to Hide the Illegal Scheme from the Principals of Granite Express Nashville.**

58.     The Former Employees and their key accomplices took care to ensure that the side business remained undetected by Granite Express USA and the principals of Granite Express Nashville for as long as possible.   Toward the end of 2014, as the principals of Granite Express Nashville announced their intention to take a more active role in the day-to-day operations of the company, Smith devised an elaborate diversion by feigning an interest in purchasing a 50% ownership stake in Granite Express Nashville and threatened that unless they acceded to his demands and afforded him more autonomy, he would conveniently leave their employ and start his own business.  This ruse kept the principals of Granite Express Nashville at bay for an additional period, enabling Smith and

Hernandez to leverage their positions of confidence into an operation that would ultimately openly compete against their employer.

59. In the mistaken belief that Smith's ownership pretensions reflected an unwavering loyalty to the business of his employer, Granite Express Nashville's principals engaged in good-faith negotiations to sell him a 50% stake in Granite Express Nashville and substantially expanded their inventory.

60. Seizing upon this unique opportunity, Smith and Hernandez spent the better part of the spring and summer 2015 courting the Granite Express Nashville customer base and consolidating good-will for themselves by delivering hundreds of slabs of granite from the inventory of Granite Express Nashville on nothing more than a handshake, foregoing their employer's standard operating procedures.

61. After months of protracted negotiations, delayed and unfulfilled promises from Smith to provide a complete draft of proposed documents for the new venture, as well as a demonstration that he had the financial backing to buy in to the company, the principals became skeptical that Smith did not have a good-faith intention of purchasing a stake in the company, as originally represented, and that Smith was driven by ulterior motives. Smith flew to Miami in July, 2015, and after substantial negotiations, agreed that he would pay $800,000.00 for a 50% stake in Granite Express Nashville, including certain inventory.

62. The parties further agreed that upon completion of Smith's purchase of a 50% equity interest in Granite Express Nashville, they would merge their respective interests in this company into a newly-formed Tennessee limited liability company named "Granite X, LLC."

63.    The principals insisted that Smith comply with his promise to provide a draft of the closing documents and proof of funds during the week of August 17th and that the parties close on the purchase and sale transaction no later than August 21, 2015, with an initial $500,000.00 payment to be made by that date by Smith, and the remaining $300,000.00 to be paid out over a six (6) month period.

64.    Smith failed to close the deal on August 21. When Smith failed to close, the principals of Granite Express Nashville became alarmed, and Nelio Costa advised Smith that he would travel from Miami to Nashville to meet with him to bring a definitive conclusion to the proposed transaction. As a result, the Former Employees knew that time had finally run out on their extended scheme.

65.    By this point, Smith and Hernandez had already administratively dissolved NSS on August 8, 2015, and were prepared to incorporate their new company, Omni Stone.

**D.    Granite Express Nashville Discovers the Illegal Scheme and Terminates the Employment of Smith, Hernandez, Coronado, McCauley, and Mouck.**

66.    Realizing that they had run out of time to further extend their scheme, Smith and Hernandez incorporated Omni Stone the following Monday, August 24, 2015, listing as its principal place of business the same location "borrowed" to conduct their nefarious activities through NSS. While still on the company payroll, Smith, Hernandez, and other Granite Express Nashville employees began quickly transferring inventory and equipment from the Granite Express Nashville warehouse to this separate facility and actively soliciting Granite Express Nashville customers for business.

67.    They also generated hundreds of backdated invoices in a last-minute attempt to cover their undocumented inventory transfers and stripped Granite Express

Nashville of any evidence that could incriminate them by exposing any portion of their scheme.

68.     Nelio Costa arrived to Nashville in the late afternoon of Tuesday, August 26, 2015, and to his utter shock found the offices completely devoid of any and all files and documentation. He asked Smith and Hernandez what was going on, to which Smith replied that they had removed all documents "in order to paint the offices." Not surprisingly, Smith advised Nelio Costa that same afternoon that he had no interest in proceeding with the ill-fated purchase of the 50% shares in Granite Express Nashville.

69.     At the same time, Nelio Costa and a Miami-based employee for Granite Express USA began discovering significant discrepancies in the inventory and accounts receivable. There was a significant spike of $250,000.00 in accounts receivable entered into the accounting system over the previous two days. There was also a discrepancy in the inventory. An audit of the inventory later that evening revealed that 78 slabs were unaccounted for and otherwise missing. Finally, all proof of delivery logs were mysteriously missing.

70.     The following day, on August 27, 2015, Smith and Hernandez attempted to identify the whereabouts of the missing slabs, without providing an explanation as to their failure to follow standard operating procedures documenting the same. Smith declared to Nelio Costa as a final response that he could deduct any "uninvoiced" slabs from his commissions. Despite repeated demands, neither Smith nor Hernandez ever produced the proof of delivery logs or the remaining documents spoliated from the office.

71.     Meanwhile, earlier that morning, Coronado called in saying that she was "sick" and unable to work that day. All employees were conspicuously absent from the

office.  Later that afternoon, as Nelio Costa pondered the bizarre circumstances he had just uncovered, he identified some unusual movement at the end of the driveway in front of the warehouse: a brand new business with a visible inventory of natural stone products. Increasingly suspicious and thinking this was more than a mere coincidence, Nelio Costa went to the new warehouse to investigate.  Upon entry into the warehouse, he was greeted by previously "ill" Coronado, who immediately burst into tears when Nelio Costa asked her to explain what was going on.  He repeatedly asked her who owned the material located in the warehouse, to which she replied "NSS."  Coronado remained crying at the doorway and Smith rushed in, explaining that all the material and equipment therein was "his" but that if anything had been improperly moved over from Granite Express Nashville, then he would return the same.

72.     Smith's response was merely part of yet another elaborate alibi concocted to justify the separated inventory and the Defendants' skullduggery.  According to Smith, he had "won" a lawsuit relative to his fabrication business back in St. Louis and had been "paid" from the suit with the same granite slabs.  This explanation was initially given by Smith to the principals of Granite Express Nashville earlier that summer when he proposed to use these slabs to receive a credit against the purchase price for his 50% interest in Granite Express Nashville.

73.     Later that same evening, Smith sent Nelio Costa an email stating that he wished to offer $50,000.00 to purchase 100% of the stock of Granite Express Nashville and offered an additional $100,000.00 for certain inventory.  He demanded that the accounts receivable remain with him and that he be provided a 5% commission for any amounts recovered since, as he knowingly repeated to Nelio Costa, he was the only

individual in a position to confirm that deliveries had actually been made to Granite Express Nashville customers to ensure the validity of any corresponding invoice.

74.     Undaunted, on August 28, 2015, Granite Express Nashville terminated the employment of Smith and Hernandez for breach of fiduciary duties and other causes after discovering evidence of their scheme.  Granite Express Nashville also terminated the employment of Coronado, McCauley, and Mouck for related causes and their abandonment of the workplace.

75.     Granite Express Nashville has not unraveled the full extent of the scheme perpetrated by the Defendants or identified all those involved, particularly those customers of Granite Express Nashville with whom Smith and Hernandez have close relationships. Omni Stone has an inventory of granite and equipment comprised of material converted from Granite Express Nashville and/or acquired through proceeds generated from the misappropriation of the clients and advantageous business relations of Granite Express Nashville.  Multiple shipments of containers acquired through suppliers with which Granite Express USA has active relations have arrived at their new warehouse.  Smith and Hernandez are likely to hide this material and move to empty the bank accounts related to these activities at Bank of America, N.A., and attempt to abscond with the proceeds from their scheme.  Thus, immediate relief in this Court is necessary.

76.     For all of these reasons, Granite Express USA and Granite Express Nashville bring this action to enjoin any further illegal procurement and sales of granite and to recover damages as a result of the illegal scheme.  In addition, Granite Express USA and Granite Express Nashville seek emergency injunctive relief, including seizure of the remaining illegal product in Nashville, and freezing the bank accounts for NSS and Omni

Stone to ensure that Smith, Hernandez, and their co-horts can no longer purchase, sell, or profit from misappropriation of the confidential information and trade secrets of Granite Express and Granite Express Nashville..

**E.** **Granite Express and Granite Express Nashville will suffer Irreparable Harm if Emergency Injunctive Relief is Not Granted.**

77.     In addition to the damages and permanent injunctive relief sought by this Complaint, Granite Express Nashville also requires provisional relief, including a Temporary Restraining Order and a Preliminary Injunction.

78.     Absent equitable intervention by this Court, both Granite Express USA and Granite Express Nashville will suffer irreparable injury for which there is no adequate remedy at law because their Former Employees have and will continue to operate in direct competition with them, in violation of the Agreement and Handbook that each of the Former Employees executed as an express condition of their employment.

79.     Moreover, the Former Employees, and specifically, Smith and Hernandez, possess valuable confidential information and trade secrets that they have and will continue to use to compete against Granite Express USA and Granite Express Nashville.  Even though the Former Employees have abandoned and been terminated by Granite Express Nashville as of August 28, 2015, Granite Express Nashville does not know the full scope of the Defendants' scheme or all the parties that are working in concert with the Defendants.  It is also unknown how many individuals are in possession of proprietary information and inventory belonging to Granite Express USA and/or Granite Express Nashville.  Without injunctive relief, Smith, Hernandez, and Pulecio will continue to work with those unidentified co-conspirators to misappropriate confidential information and trade secrets of Granite Express USA and Granite Express Nashville in order for them to

sell their own merchandise, including merchandise acquired through the conversion of Granite Express Nashville's inventory and trade secrets to their own benefit, in direct competition with Granite Express USA and Granite Express Nashville.

80.     Granite Express USA and Granite Express Nashville also will suffer irreparable injury because the Defendants, absent an immediate injunction, will continue to solicit Granite Express Nashville's valued customers and distributors with offers to purchase and sell materials that have been acquired and produced through the misappropriation of Granite Express Nashville's confidential information and trade secrets. Those solicitations and sales, which are being made by using Granite Express USA's confidential pricing and marketing information, will destroy Granite Express Nashville's goodwill with those customers and damage its future relationships with them.

81.     Granite Express Nashville further needs emergency injunctive relief because Omni Stone is warehousing in Nashville, Tennessee, within one (1) block of Granite Express Nashville's warehouse,  an inventory of merchandise illegally acquired through the conversion of Granite Express Nashville's inventory and/or proceeds acquired from the misappropriation of Granite Express Nashville's trade secrets and advantageous business relations that it intends to sell and consign to Granite Express Nashville's customers in direct competition with Granite Express Nashville.  It is important that this merchandise presently located in its warehouse, as well as that merchandise it has consigned to Granite Express Nashville's customers and is presently in transit, be seized so that they cannot undercut their market and injure Granite Express Nashville's goodwill with its customers.  Those products are located in a warehouse at 2832 Logan Street, Suite F, Nashville Tennessee, as well as a new warehouse that appears to be in some phase of

operation, and also have been stored in consignment at various customer locations throughout the greater Nashville area. In addition, those products are in multiple containers in transit from overseas distributors outside the confines of the United States.

82.     Finally, Granite Express Nashville requests the Court issue an Order freezing the assets of NSS and Omni Stone located at Bank of America, N.A., as well as any other bank accounts held by the individual defendants and into which were deposited funds from the illegal scheme. These bank accounts were established by Smith and/or Hernandez specifically to accept payments for the misappropriated inventory and business opportunities, and they have no legitimate purpose. On information and belief, all assets in these bank accounts are attributable to the illegal sales. Granite Express Nashville believes those assets will be moved immediately upon the filing of this action unless the Court issues emergency injunctive relief freezing those assets.

83.     The emergency relief sought by Granite Express Nashville in this Complaint is narrowly tailored. Granite Express Nashville asks only that the Court enjoin the Defendants from their illegal activities or other activities that could result in the continued misappropriation of Granite Express Nashville's confidential information and trade secrets. Granite Express Nashville does not seek to enjoin the Defendants' conduct of legitimate business, if any.

**F.** *Alter Ego* **Allegations as to Smith, Hernandez, NSS, and Omni Stone.**

84.     The Plaintiffs are informed and believe, and on that basis allege, that there exists, and at all times material hereto existed, a unity of interest and ownership between Smith and Hernandez and NSS and Omni Stone such that any individuality and separateness between these defendants have ceased.  Smith and Hernandez, among other things, systematically engaged in a series of transactions intended to transfer assets from NSS to themselves, third parties, and to other entities, such as Omni Stone.  Smith and Hernandez have at all times exercised pervasive control and dominion over NSS and Omni Stone with disregard for the separate legal status of these entities in an attempt to defraud Granite Express USA and Granite Express Nashville, as well as the clients of Granite Express Nashville.

85.     Adherence to the fiction of the separate existence of the NSS and Omni Stone as separate entities distinct from Smith and Hernandez would permit an abuse of the corporate privilege and would sanction fraud, promote injustice, and countenance skullduggery by these defendants.

86.     The Plaintiffs further are informed and believe and on that basis allege that NSS and Omni Stone have such a unity of interest and operations that separate personalities of these corporations no longer exist and if the acts are treated as those of the corporations alone, an inequitable result will follow.  The Plaintiffs are informed and believe and on that basis allege that NSS and Omni Stone have transferred assets and revenues among and between themselves so as to defraud the Plaintiffs and the Plaintiffs' clients.  NSS and Omni Stone are largely owned and controlled by Smith and Hernandez. These corporations operate not as entities, but rather as one, with the separate corporations used to shield assets

and other revenues in a manner to best suit their owners. Moreover, NSS and Omni Stone are the *alter egos* of each other, in that they all share some of the same ownership, management, and marketing, as well as business, purpose, operation, equipment, customers, and supervision as before. If Smith and Hernandez are not held jointly and severally responsible as the *alter ego*s of NSS and Omni Stone, it would promote injustice and countenance skullduggery.

      **G.**    **Successor Liability Allegations Between NSS and Omni Stone.**

87.    Omni Stone should be held liable for the actions of NSS insofar as there is an express or implied undertaking of the liabilities in the form of: (1) an express or implied assumption of such debts; (2) the transaction amounting to a consolidation or merger of the two companies; (3) Omni Stone is a mere continuation of NSS; or, (4) Omni Stone was incorporated fraudulently for the purposes of giving continuity to the operations of NSS, while simultaneously attempting to shield itself from the liability of the same.

**COUNT I – VIOLATION OF LANHAM ACT, 15 U.S.C. § 1125(a)
(ALL DEFENDANTS)**

88.    Granite Express Nashville incorporates and restates paragraphs 1 through 87 above as if fully set forth herein.

89.    The Defendants sold a variety of Granite Express Nashville products that originated with Granite Express Nashville.

90.    The Defendants falsely designated the origin of these products by, *inter alia*, removing Granite Express Nashville's trademark and markings from products and replacing them with trademarks of their own and other companies. The Defendants also misrepresented facts in connection with the sale of the products. The Defendants' false

designations of origin and misrepresentation were likely to and, in fact, did cause consumer confusion.

91.     The Defendants' actions constituted a violation of the Lanham Act, 15 U.S.C. § 1125(a), and have resulted in great injury and damage to Granite Express Nashville in an amount to be proven at trial.  Granite Express Nashville is entitled to an injunction against further violations under 15 U.S.C. § 1116 and to the seizure of existing products violating the Act under 15 U.S.C. § 1118.   Additionally, Granite Express Nashville requests an award of its attorneys' fees pursuant to 15 U.S.C. § 1117(a).

**COUNT II – MISAPPROPRIATION OF TRADE SECRETS**
**(Tennessee Uniform Trade Secret Act)**
**Tenn. Code Ann. § 47-25-1701, et seq. ("TUTSA")**
**(ALL DEFENDANTS)**

92.     Granite Express Nashville incorporates and restates paragraphs 1 through 87 above as if fully set forth herein.

93.     Granite Express Nashville possesses valuable trade secret information. That information includes, but is not limited to, Granite Express USA's network of quality suppliers that it has developed through the years and the identity of those suppliers; Granite Express Nashville's database of customer information, including product preferences, order histories, terms of payment, and shipping terms; and, Granite Express Nashville's cost, pricing, profit, and other financial information.  All this information provides Granite Express Nashville with a competitive advantage due to its uniqueness and secrecy.

94.     Granite Express Nashville took and takes reasonable steps to protect the secrecy of this information.   Granite Express Nashville allows only its most trusted employees to access this information, and even then, only on terms of strict confidentiality. Granite Express Nashville kept and keeps physically stored secret information under lock

and key and an alarm system, and electronically stored secret information is secured by passwords. Granite Express Nashville has written policies for the confidentiality of trade secret information that it requires those with access to read and acknowledge in writing.

95. The Defendants misappropriated Granite Express Nashville's trade secret information. Among other things, the Defendants used Granite Express Nashville's secret customer list and information to solicit business for themselves. The Defendants used and use Granite Express Nashville's cost, pricing, and other financial information to market its products at a competitive advantage over Granite Express Nashville.

96. The Defendants' actions constitute a violation of TUTSA.

## COUNT III – BREACH OF CONTRACT
## (SMITH, HERNANDEZ, CORONADO, MCCAULEY, AND MOUCK)

97. Granite Express USA and Granite Express Nashville incorporate and restate paragraphs 1 through 87 above as if fully set forth herein.

98. As a condition of their employment and/or continued employment, each of the Former Employees executed and was subject to a valid and binding Agreement, incorporating therein by reference the terms and conditions set forth under the Handbook, with Granite Express USA and Granite Express Nashville as its assignee.

99. Granite Express Nashville complied with its obligations under each Agreement.

100. Smith, Hernandez, Coronado, McCauley, and Mouck breached his and her respective Agreement by the conduct described herein. Each defendant has engaged in employment that directly competes with the business of Granite Express Nashville, both during and immediately following the termination of their employment with Granite Express Nashville. Smith and Hernandez have worked for their own benefit rather than

33

Granite Express Nashville's benefit during the scope of each defendant's respective Agreement, soliciting Granite Express Nashville customers to give business to them rather than to Granite Express Nashville. Smith and Hernandez also have disclosed and misappropriated Granite Express Nashville's confidential and proprietary information.

101. As a direct and proximate result of these defendants' conduct, Granite Express USA and Granite Express Nashville have suffered and will continue to suffer great injury and damage, in an amount to be proven at trial.

## COUNT IV – BREACH OF FIDUCIARY DUTIES
## (SMITH AND HERNANDEZ)

102. Granite Express USA and Granite Express Nashville incorporate and restate paragraphs 1 through 87 above as if fully set forth herein.

103. As employees of Granite Express Nashville with access to confidential information and trade secrets, Smith and Hernandez owed Granite Express Nashville fiduciary duties of confidentiality and loyalty.

104. Their conduct described above violated their fiduciary duties and was the proximate cause of great injury, damage, and detriment to Granite Express Nashville.

## COUNT V – AIDING AND ABETTING BREACH OF FIDUCIARY DUTIES
## (NSS AND OMNI STONE)

105. Granite Express USA and Granite Express Nashville incorporate and restate paragraphs 1 through 87 above as if fully set forth herein.

106. As employees of Granite Express Nashville with access to confidential information and trade secrets, Smith and Hernandez owed Granite Express Nashville fiduciary duties of confidentiality and loyalty.

107. NSS and Omni Stone knew of the relationship between Smith and Hernandez and Granite Express Nashville, and further, they knew of the multiple breaches of their fiduciary duties.

108. The conduct of Smith and Hernandez described above violated their fiduciary duties and was the proximate cause of great injury, damage, and detriment to Granite Express Nashville.

109. NSS and Omni Stone substantially assisted, encouraged, and conspired with Smith and Hernandez in their wrongdoings and in the breach of their fiduciary duties.

## COUNT VI – CONVERSION
## (ALL DEFENDANTS)

110. Granite Express USA and Granite Express Nashville incorporate and restate paragraphs 1 through 87 above as if fully set forth herein.

111. The Defendants wrongfully asserted dominion over Granite Express Nashville's property, permanently or for an indefinite time, inconsistent with Granite Express Nashville's ownership. The Defendants exploited Granite Express Nashville's trade secrets and confidential information to purchase and sell products for their own profit. A demand for the return of Granite Express Nashville's inventory would be futile because, in many cases, the Defendants have already sold the products to third parties.

## COUNT VII – TORTIOUS INTERFERENCE
## (ALL DEFENDANTS)

112. Granite Express USA and Granite Express Nashville incorporate and restate paragraphs 1 through 87 above as if fully set forth herein.

113. Granite Express Nashville had a variety of contractual and prospective business relationships with third parties under which it had legal rights. For example,

Granite Express Nashville had regular business relationships with many customers to which it sold product on a recurring basis.

114.    The Defendants knew of these relationships and intentionally and unjustifiably interfered with them, causing third parties not to perform.  The Defendants interfered with Granite Express Nashville's express or implied employment contracts with Smith, Hernandez, Coronado, McCauley, and Mouck, causing them to fail in their duties to preserve Granite Express Nashville's confidential information and remain loyal to the company.  All Defendants conspired to interfere with Granite Express Nashville's prospective recurring customer relationships by using Granite Express Nashville's trade secrets to make illicit sales of competing products to those customers.

115.    As a direct and proximate result of the Defendants' conduct, Granite Express Nashville has suffered and will continue to suffer great injury and damage, in an amount to be proven at trial.

### COUNT VIII – CIVIL CONSPIRACY
### (ALL DEFENDANTS)

116.    Granite Express USA and Granite Express Nashville incorporate and restate paragraphs 1 through 87 above as if fully set forth herein.

117.    The Defendants formed a conspiracy to perform the unlawful acts described herein and took the overt acts described above in furtherance of that conspiracy.  Among other things, the Defendants conspired to misappropriate Granite Express Nashville's trade secrets, convert Granite Express Nashville's property, tortiously interfere with Granite Express Nashville's business relationships, and pass Granite Express Nashville's goods off as their own.

118.     As a direct and proximate result of the Defendants' conduct in furtherance of the conspiracy, Granite Express Nashville has suffered and will continue to suffer great injury and damage, in an amount to be proven at trial.

## COUNT IX – RICO, 18 U.S.C. § 1962(C)
## (ALL DEFENDANTS)

119.     Granite Express USA and Granite Express Nashville incorporate and restate paragraphs 1 through 87 above as if fully set forth herein.

120.     NSS was an enterprise engaged in and whose activities affected interstate commerce. The Defendants are employed by or associated with the enterprise.

121.     The Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Granite Express Nashville. Specifically, the Defendants furthered their scheme to defraud Granite Express Nashville and obtain money by the false pretense of both acquiring and selling Granite Express Nashville's property as their own by means of wire communications in both interstate and foreign commerce. Among other things, the Defendants sent and received multiple emails and faxes in furtherance of this scheme from a period from May, 2013, up through and including August 28, 2015. Additionally, the Defendants controlled the receipt and transfer of funds throughout this period through the use of email, as well as online banking and credit card facilities, including, but not limited to, use of a Squareup credit card account, as well as Bank of America, N.A., funds/wire transfer services. Further, the Defendants repeatedly transported in interstate and foreign commerce the Granite Express Nashville products they converted, including, but not limited to, the misappropriation of confidential information, trade secrets, and advantageous business opportunities belonging to Granite Express

Nashville, as exemplified by the shipments of containers of granite as well as separate slabs. These products were worth more than $5,000.00.

122.    Pursuant to and in furtherance of their fraudulent scheme, the Defendants committed multiple related acts of wire fraud under 18 U.S.C. § 1343 and of the interstate transportation of stolen property under 18 U.S.C. § 2314.

123.    The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

124.    The Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through a pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(c).

125.    As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Granite Express Nashville has been injured in its business and property in that it has lost the exclusive use of its valuable trade secrets, lost sales and customers, and lost goodwill within the granite distribution industry.

126.    Granite Express Nashville requests that this Court award treble damages and its attorneys' fees pursuant to 18 U.S.C. § 1964(c).

### COUNT X – RULE D POSSESSORY ACTION IN ADMIRALTY (OMNI STONE, SMITH, AND HERNANDEZ)

127.    Nelio Costa and Granite X incorporate and restate paragraphs 1 through 87 above as if fully set forth herein.

128.    Jurisdiction of the Court under this Count is based upon the admiralty and maritime nature of the claims within the meaning of 28 U.S.C. § 1333(1) and F.R.Civ.P. 9(h).

38

129. Nelio Costa is a Member of Granite X and brings this action in a derivative capacity on behalf of the same.

130. Granite X is a consignee to one shipping container containing certain natural stone products it purchased from AMC Marmo from Udaipur, Rajasthan, India.

131. On or about July 28, 2015, Granite X agreed with a non-party ocean common carrier to transport said shipping container containing certain natural stone products sold by AMC Marmo to ("In-Rem Shipment") by sea from Udaipur, India, via the Port of  Loading in Mundra, to the Port of Destination in Charleston, South Carolina, and from there to Ramp in Nashville. The agreement was memorialized in a non-negotiable bill of lading ("Bill"), a true and correct copy of which is attached hereto as Exhibit D and incorporated herein by reference.

132. After its discharge in Charleston, South Carolina, the In-Rem Shipment was cleared through U.S. Customs, and Omni Stone, by and through Smith and Hernandez, intentionally instructed and authorized the mis-delivery of the "In-Rem Container" to its warehouse in Nashville, Tennessee, which was done.

133. The In-Rem Shipment is located in Nashville, Tennessee, in the custody of Omni Stone, under the control of Smith and Hernandez, at one or both of its warehouse locations in Davidson County, Tennessee.

134. Granite X has demanded the proper delivery of the In-Rem Shipment, but Omni, Smith, and Hernandez have neglected, failed, and refused to accede to the same.

135. Pursuant to Rule D of the Supplemental Admiralty Rules, Granite X is entitled to immediate possession of the In-Rem Shipment from Omni Stone, Smith, and Hernandez on grounds that these three defendants have wrongfully taken and withheld

possession of maritime property comprising the In-Rem Shipment since they neither hold legal title to, nor have they ever paid for the same. If possession cannot be had, then Granite X is entitled to damages for the full value of the In-Rem Shipment and other damages it has suffered due to the wrongful taking and detention of the same.

### COUNT XI – RULE B and E ACTION IN ADMIRALTY
### (NSS, OMNI STONE, SMITH, AND HERNANDEZ)

136.     Granite Express Nashville incorporates and restates paragraphs 1 through 87 above as if fully set forth herein.

137.     Jurisdiction of the Court under this Count is based upon the admiralty and maritime nature of the claims within the meaning of 28 U.S.C. § 1333(1) and F.R.Civ.P. 9(h).

138.     The Defendants transferred assets and funds derived from their scheme as described herein from NSS, both directly and indirectly, in favor of Omni Stone with the intent to hinder, delay, or defraud Granite Express Nashville or other creditors of Smith, Hernandez, or NSS, or without receiving the reasonable equivalent consideration in exchange for the transfer, and as a result of the transfers, NSS became insolvent and/or unable to pay its debts when due.  As such, these transfers are fraudulent conveyances pursuant to Tenn. Code Ann. §§ 66-3-305, 66-3-306.

139.     Upon information and belief, funds were transferred overseas via wire transfer and other modes of payment by and on behalf of NSS, in favor of Omni Stone, directly or indirectly, for the purchase of natural stone slabs that were loaded as cargo into multiple shipping containers for transport by sea to Omni Stone and/or other third-party consignees.

140.     The Defendants cannot be "found" in this District for purposes as delineated in Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. Granite Express USA and Granite Express Nashville are informed that assets are or will be in the District, including, but not limited to, cargo contained within containers, cash, funds, escrow funds, credits, wire transfers, electronic funds, transfers, accounts, letters of credit, freights, sub-freights, charter hire or sub-charter hire, at or being transferred and/or wired to, from or through local banks purchased with proceeds from NSS, as well as funds from Smith and Hernandez in connection with same, transferred and conveyed will enter the District.

141.     To the extent that fraudulent transfers were made, Granite Express Nashville and Granite Express USA are entitled to a judgment voiding the transfers and directing the transferees of all such transfers to return the transferred property to the extent necessary to satisfy the claims of Granite Express USA and Granite Express Nashville, and an attachment and other provisional remedies against the assets transferred or other property of the transferees.

### COUNT XII – REPLEVIN
### (OMNI STONE, SMITH, AND HERNANDEZ)

142.     Nelio Costa and Granite X incorporate and restate paragraphs 1 through 87, as well as 128 through 135, inclusive, above as if fully set forth herein.

143.     Granite X is entitled to replevy the In-Rem Shipment, or if the In-Rem Shipment cannot be replevied, to damages for its full value, together with other damages caused by the wrongful taking and detention.

## COUNT XIII – CONSTRUCTIVE TRUST
## (ALL DEFENDANTS)

144.    Granite Express USA and Granite Express Nashville incorporate and restate paragraphs 1 through 87 above as if fully set forth herein.

145.    As described herein, the Defendants have acquired Granite Express Nashville's property under such circumstances that, though they may hold the legal title, they may not in good conscience retain the beneficiary interest therein.

146.    Smith and Hernandez made express and implied promises to keep Granite Express Nashville's trade secrets confidential.  In reliance on those promises, Granite Express Nashville provided access to many of its trade secrets to Smith and Hernandez. Smith and Hernandez had a confidential relationship with Granite Express Nashville.  They have unjustly enriched themselves by exploiting Granite Express Nashville's trade secrets for their own personal benefit.

147.    On information and belief, the Defendants held and presently hold at a warehouse an inventory of property that was obtained illegally and that they intend to sell illegally.

148.    In addition, on information and belief, the Defendants' revenues and profits from their illegal activities are kept at one or more bank accounts opened and maintained at Bank of America, N.A.

149.    This property is subject to a constructive trust for Granite Express Nashville's benefit.

## COUNT XIV – ACCOUNTING
## (ALL DEFENDANTS)

150.    Granite Express USA and Granite Express Nashville incorporate and restate paragraphs 1 through 87 above as if fully set forth herein.

151.    As described above, Smith and Hernandez have fiduciary relationships with Granite Express Nashville.  A remedy at law would be inadequate.  Accordingly, Granite Express Nashville asks this Court to order the Defendants to provide a full accounting of: 1) the inventory and equipment that they have converted from Granite Express Nashville; 2) the inventory they have acquired based upon any of the supplier contacts established and/or maintained by Granite Express USA and/or Granite Express Nashville and/or by use of the proceeds from sale of converted inventory and/or property; the buyers of any of the inventory converted or other illegal products sold by or through Smith or Hernandez, whether directly or through NSS or Omni Stone; and, 5) the amount of revenue paid by the buyers of any of those products.

## COUNT XV – ABUSE OF PROCESS
## (SMITH AND OMNI STONE)

152.    Cornell Costa, Nelio Costa, Granite X, and Granite Express Nashville incorporate and restate paragraphs 1 through 87 above as if fully set forth herein.

153.    On or about September 2, 2015, Smith and Omni Stone filed a Complaint ("Complaint") in the Tennessee State Lawsuit against Granite Express Nashville, Cornell Costa, Nelio Costa, and Granite X, seeking, *inter-alia*, judicial dissolution of Granite X, as well as counts against Cornell Costa, Nelio Costa, and Granite Express Nashville sounding in intentional inducement of breach of contract, intentional interference with business relationships, defamation, and intentional infliction of emotional distress, seeking, *inter-*

*alia*, damages, as well as temporary and permanent injunctive relief. A true and correct copy of the Complaint is attached hereto as <u>Exhibit E</u> and incorporated herein by reference.

154. Smith and Omni possessed ulterior motives in filing the Complaint, to-wit: 1) to block and actively interfere with the ongoing investigation of Granite Express Nashville and its principals into the scheme of the Former Employees, including their misappropriation of Granite Express Nashville and Granite X assets, confidential information, trade secrets, business relations, and opportunities; as well as 2) to preserve the advantageous business relationships they have misappropriated and diverted from Granite Express Nashville; and, 3) to anticipate and avert any judicial intervention that would prevent the Former Employees from competing against Granite Express Nashville, in violation of their Agreement.

155. The acts of Smith and Omni Stone in filing the Complaint and procuring the issuance of a Temporary Restraining Order were a willful or intentional misuse of the process issued by the court in the Tennessee State Lawsuit for some wrongful and unlawful objective, or ulterior purpose not intended by the law to effect.

156. Additionally, the Complaint, false affidavits, and injunction requests were designed with the sole and immediate purpose to compel, coerce, and extort the Plaintiffs into withdrawing an ongoing criminal investigation by the Nashville Police Department and agreeing not to pursue legal action by threatening to cause the Plaintiffs to incur labor, legal, interest, and other expenses; to suffer a loss of reputation and injury to their customer relations, credit and professional standing; and to deprive Granite Express Nashville, Granite X, and their principals of money, property and management, thus damaging them by jeopardizing and interfering in their commercial activities.

157. The Temporary Restraining Order issued against Granite Express Nashville, Granite X, Cornell Costa, and Nelio Costa was issued and executed willfully and maliciously, solely for the purpose described above and, in any event, for no lawful purpose, and neither Smith nor Omni Stone, nor any of the Former Employees, contrary to their sworn representations, was in fear for their personal safety and protection, and as a result, knew that there were no grounds for the issuance of same.

158. Moreover, both Smith and Omni Stone are fully aware that the inquiries and declarations made by Granite Express Nashville, Granite X, and their principals with third parties, including past and present clients, are truthful and fully justified and necessary in connection with their investigation into the scheme of the Former Employees, as well as to defend and protect any property rights and interests that Granite Express Nashville has with said third parties as against Smith and Omni Stone. As a result, Smith and Omni Stone knew that there were no legitimate grounds for the issuance of any restraining order against these parties pertaining to communications with past and present clients, as well as actual and prospective business opportunities.

159. Smith requested in the Complaint that the Court accept jurisdiction over the judicial dissolution of Granite X, yet subsequent to the filing of the same, Smith and Omni Stone deliberately diverted Granite X's property for their own use and benefit.

160. As a result of the foregoing Complaint, sworn affidavits, and injunction requests, Cornell Costa, Nelio Costa, Granite X, and Granite Express Nashville have suffered damages, including the expense of defending the same.

## **DEMAND FOR JURY TRIAL**

161. The Plaintiffs demand a trial by jury as to all issues so triable.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs demand the following relief:

1.      The Court issue a Temporary Restraining Order and Temporary Injunction, as requested herein, to protect the rights of Granite Express USA and Granite Express Nashville pending trial, including enjoining the Defendants from continuing their illegal activities;

2.      The Court issue a Permanent Injunction, as requested herein, enjoining the Defendants from continuing their illegal activities;

3.      An award of damages for compensable injuries to Granite Express USA and Granite Express Nashville, in an amount to be proven at trial, including, but not limited to, lost profits, disgorgement of all benefits reaped by the Defendants, plus pre- and post-judgment interest and costs;

4.      An accounting and constructive trust as to all funds and other benefits received by the Defendants from their illegal activities;

5.      Seizure and turnover of all existing products violating the Lanham Act, pursuant to 15. U.S.C. § 1118, including those products contained in the Defendants' warehouse located at 2832 Logan Street, Suite F, Nashville, Tennessee 37211-2473 or any other location;

6.      An attachment of all funds in the bank accounts associated with Omni Stone and NSS located at Bank of America, N.A., and at any other banking or financial institutions;

7.      Treble damages pursuant to 18 U.S.C. § 1964(c);

8. That a Warrant for Arrest of, or an Order for Replevin of the In-Rem Shipment issue and that all persons wrongfully in possession of the In-Rem Shipment be personally cited to appear and answer this Verified Complaint;

9. That a Warrant for Arrest of, or an Order for Replevin of all shipments and/or other assets set forth under Count XI contained therein where ever found and that all persons wrongfully in possession of same be personally cited to appear and answer this Verified Complaint;

10. That the In-Rem Shipment be returned to Granite X or that Granite X have a judgment against all the Defendants, jointly and severally, for the value of the In-Rem Shipment and all damages caused by the wrongful taking and detention;

11. Exemplary and punitive damages for which the Plaintiffs are entitled in an amount to be proven at trial;

12. Attorneys' fees, costs, and pre- and post-judgment interest for which the Plaintiffs are entitled; and,

13. Such other and further relief as this Court deems just and proper.

Respectfully submitted,

s/ Ben M. Rose
Ben M. Rose        (#21254)
Joshua D. Arters        (#31340)
The Law Offices of Ben M. Rose, PLLC
Post Office Box 1108
Brentwood, Tennessee  37024
615-942-8295
ben@bmrfirm.com
josh@bmrfirm.com

s/ Marcus Kimminau Soares

SOARES LAW, PLC
4700 N.W. 2nd Avenue, Suite 202
Boca Raton, Florida 33431
305-305-6036

*Pro Hac Vice* Application Pending


Attorneys for the Plaintiffs, Nelio Costa,
individually and derivatively on behalf of
Granite X, LLC, Cornell Costa, Granite
Express of USA, Inc., and Granite Express
of Nashville, Corp.

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, the undersigned verifies that he is an authorized representative of Granite Express of USA, Inc., and verifies under penalty of perjury that the factual statements set forth in the foregoing pleadings are true and correct to the best of his knowledge and belief.

GRANITE EXPRESS OF USA, INC.

By: 

Cornelio Costa, its President

Sworn and subscribed before me this

the _04_ day of _November_ 200 _15_

**Ybelice Garzaro**
COMMISSION #FF233947
EXPIRES: June 7, 2019
WWW.AARONNOTARY.COM

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, the undersigned verifies that he is an authorized representative of Granite Express of Nashville, Inc., and verifies under penalty of perjury that the factual statements set forth in the foregoing pleadings are true and correct to the best of his knowledge and belief.

**GRANITE EXPRESS OF NASHVILLE, INC.**

By: _____

Nelio Costa, its Vice-President